# United States Court of Appeals
## For the First Circuit

---

No. 01-1367

DANIEL J. DONOVAN,

Petitioner, Appellant,

v.

STATE OF MAINE,

Respondent, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]
[Hon. David M. Cohen, U.S. Magistrate Judge]

---

Before

Selya, Circuit Judge,

Rosenn* and Cyr, Senior Circuit Judges.

---

Darla J. Mondou for appellant.
Donald W. Macomber, Assistant Attorney General, with whom
G. Steven Rowe, Attorney General, and Charles K. Leadbetter,
State Solicitor, were on brief, for appellee.

---

January 10, 2002

---

_____

*Of the Third Circuit, sitting by designation.

**SELYA, Circuit Judge.** This appeal is the latest in an ever-lengthening line of cases trailing in the wake of Congress's enactment of a limitation period for the filing of federal habeas petitions. See, e.g., Delaney v. Matesanz, 264 F.3d 7 (1st Cir. 2001); Neverson v. Bissonnette, 261 F.3d 120 (1st Cir. 2001); Gaskins v. Duval, 183 F.3d 8 (1st Cir. 1999) (per curiam). The limitation period is part of the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 214 (1996). The statute of limitations for federal review of state prisoners' habeas applications is codified at 28 U.S.C. § 2244(d)(1).

Under this provision, "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). With exceptions not relevant here, this one-year limitation period starts to accrue on "the date on which the [state-court] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Id. Applying this formulation, the United States District Court for the District of Maine dismissed as time-barred a habeas application filed by petitioner-appellant Daniel

J. Donovan, a state prisoner.[1]  Donovan now invites us to reinstate his application.  We decline the invitation.

## I.

### Background

On February 5, 1996, a state-court jury convicted the petitioner of gross sexual assault.  See Me. Rev. Stat. Ann. tit. 17-A, § 253 (Supp. 1996).  The trial judge sentenced him to a term of twenty years (five suspended) and ordered him incarcerated.  Maine's highest court (the Law Court) affirmed the conviction on August 8, 1997.  State v. Donovan, 698 A.2d 1045, 1049 (Me. 1997).

On February 12, 1998, the petitioner delivered to state correctional authorities a pro se petition for post-conviction relief.  That petition was docketed in the state superior court five days later.  The court appointed counsel and, after an evidentiary hearing, concluded that the petition was groundless.  The petitioner filed a notice of appeal which, under Maine law, doubled as a request for a certificate of probable cause (CPC).

---

[1]The dismissal occurred after the district judge accepted and largely adopted the detailed report and recommendation of a magistrate judge.  For simplicity's sake, we do not distinguish between the two judicial officers.  Rather, we take an institutional view and refer to the findings and determinations below as those of the district court.

-4-

<u>See</u> Me. Rev. Stat. Ann. tit. 15, § 2131(1).  On December 22, 1999, the Law Court denied the CPC, thus terminating the appeal.[2]

On September 23, 2000, the petitioner, acting pro se, delivered to prison authorities an application seeking federal habeas relief.  <u>See</u> 28 U.S.C. § 2254.  This application was docketed in the federal district court three days later.  Citing the one-year limitation period, the court rejected it, but granted a certificate of appealability.  <u>Id.</u> § 2253(c).  This appeal ensued.  Before us, the petitioner is represented by counsel.

## II.

### Framing the Issues

Any discussion of timeliness must start with the Law Court's rejection of the petitioner's direct appeal on August 8, 1997.  Giving the petitioner the benefit of the ninety-day grace period for seeking certiorari review by the United States Supreme Court, 28 U.S.C. § 2101(c), the district court ruled that the one-year statute of limitations began to accrue on the day after this grace period ended:  November 7, 1997.  The court counted forward 101 days and then stopped the accrual process as of February 17, 1998 — the date on which the petitioner filed

---

[2]The Law Court's order was dated December 20, 1999, but not entered on the court's docket until two days later.  In our view, the latter date controls.

for state post-conviction relief.  See id. § 2244(d)(2) (tolling the limitation period for such time as "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment . . . is pending"); see also Neverson, 261 F.3d at 125 (explaining the operation of this tolling provision).

Noting that the Law Court denied a CPC (and, thus, ended the petitioner's quest for state post-conviction relief) on December 22, 1999, the court resumed the count as of December 23.  At that point, there were 264 days left within which to seek federal habeas review.  The court determined that this 264-day window closed on September 11, 2000.  The petitioner's federal habeas application is deemed filed, under the prisoner mailbox rule, on September 23, 2000.  See Nara v. Frank, 264 F.3d 310, 315 (3d Cir. 2001) (explaining that "if an inmate is confined in an institution, his notice of appeal (or federal habeas petition) will be timely if it is deposited in the institution's internal mail system on or before the last day for filing"); see also Houston v. Lack, 487 U.S. 266, 276 (1988); Morales-Rivera v. United States, 184 F.3d 109, 110-11 (1st Cir. 1999) (per curiam).  The petitioner did not act until after that date.  Thus, the court considered his federal habeas action time-barred (twelve days late) absent a showing of some

-6-

sufficiently excusatory set of circumstances. Discerning none, the court dismissed the application.

The petitioner charts two routes to a potential safe harbor. First, he questions the count itself, saying that his application for federal habeas review would have been adjudged timely had the court given him the benefit of all excluded periods. Second, he asseverates that equitable tolling should apply to extend the limitation period and assigns error to the district court's rejection of that asseveration. We follow each of these routes to its logical conclusion.

## III.

### Timeliness

The petitioner's argument for timeliness hinges on his contention that the district court made three separate computational errors. First, the petitioner maintains that he delivered his state petition for post-conviction review to prison authorities on February 12, 1998, and that under the prisoner mailbox rule, the district court should have given him the benefit of the five days that elapsed between that date and the date on which his petition was docketed in the state superior court. Second, he attempts to invoke Federal Rule of

Civil Procedure 6(e), arguing that, inasmuch as he received notice of the denial of his direct appeal by mail, the district court should have given him the benefit of three additional days in calculating the expiration of the time for seeking certiorari review in the United States Supreme Court. Finally, he asserts that his petition for state post-conviction review was pending until he received notice of the denial of the CPC, and that the district court should have given him the benefit of the five days that elapsed from the effective date of the Law Court's order (December 22, 1999) to the date of receipt of notice (December 27, 1999). Since no two of these contentions yield the twelve days needed to bring the petitioner's federal habeas application within the limitation period, the petitioner must prevail on all of them to succeed on his timeliness initiative.

We need not tarry. Because we find the petitioner's second and third contentions meritless, his timeliness argument fails. Consequently, it is unnecessary for us to express an opinion on the applicability <u>vel</u> <u>non</u> of the prisoner mailbox rule to a state-court petition for post-conviction relief.[3]

---

[3]Courts have disagreed about whether this is a question of state or federal law. <u>Compare</u> <u>Adams</u> v. <u>LeMaster</u>, 223 F.3d 1177, 1181 (10th Cir. 2000) (concluding that state law governs and, thus, that the prisoner mailbox rule ought not to be applied to a state-court petition for post-conviction relief when determining tolling under 28 U.S.C. § 2244(d)(2)), <u>with</u> <u>Saffold</u> v. <u>Newland</u>, 250 F.3d 1262, 1268-69 (9th Cir. 2001) (holding to

-8-

## A.

## Additional Time due to Mailing

Citing Federal Rule of Civil Procedure 6(e), the petitioner theorizes that three days should be added to the one-year deadline for filing his federal habeas application.[4] His thinking runs along the following lines. As the district court recognized, section 2244(d)(1) provides for tolling during the ninety-day period in which the petitioner would have been allowed to ask the United States Supreme Court to grant certiorari to review the Law Court's denial of his direct appeal (the fact that the petitioner did not seek certiorari is immaterial). The petitioner concludes that this ninety-day period did not expire on November 6, 1997 (as determined by the district court), but, rather, on November 9, 1997. In support

the contrary), <u>cert.</u> <u>granted</u>, 122 S. Ct. 393 (Oct. 15, 2001). We need not decide that question here. We note in passing, however, that to the extent (if at all) this is a question of state law, the Law Court has reserved decision on whether to adopt the prisoner mailbox rule. <u>See</u> <u>Finch</u> v. <u>State</u>, 736 A.2d 1043, 1043 n.1 (Me. 1999).

[4]The rule provides:

> Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party by mail, 3 days shall be added to the prescribed period.

Fed. R. Civ. P. 6(e) (2000) (amended Dec. 1, 2001).

of this conclusion, he notes that notice of the adverse judgment was mailed to him and suggests that, due to this circumstance, the habeas court should have invoked Rule 6(e) and waited three days before starting to count the ninety-day period. The respondent counters that this claim was not raised below and urges us to hold that it has been forfeited. See, e.g., Clauson v. Smith, 823 F.2d 660, 666 (1st Cir. 1987).

Because the forfeiture question is murky, we choose to address the claim head-on. We recently have recognized "[t]he prevailing view . . . that Rule 6(e) does not apply to statutes of limitation." Berman v. United States, 264 F.3d 16, 19 (1st Cir. 2001). This is because Rule 6(e), in terms, "is centrally concerned with what a 'party' does and a 'party' operates within the framework of an existing case. By contrast, statutes of limitation . . . govern the time for commencing an action." Id. That rationale is dispositive here.

28 U.S.C. § 2101(d), in conjunction with Supreme Court Rule 13(1), merely establishes a ninety-day interval within which an aggrieved litigant may file a petition for certiorari following entry of a judgment of a state court of last resort.[5]

_____

[5]The applicable statute provides:

The time for appeal or application for a writ of certiorari to review the judgment of a State court in a criminal case shall be as prescribed by rules of the

-10-

Neither the certiorari statute nor the implementing Supreme Court rule triggers the prophylaxis of Rule 6(e) because neither of them, in the language of that rule, requires a party to take any action "within a prescribed period of time after the service of a notice" upon the party. Rather, both unambiguously require filing within ninety days after entry of a judgment. Given this structure, Rule 6(e) cannot serve to enlarge the time period for filing a petition for certiorari following entry of a judgment affirming a criminal conviction. See 1 James Wm. Moore, Moore's Federal Practice § 6.05[3] at 6-35 (3d ed. 1999) (explaining that Rule 6(e) does not apply to time periods that begin with the filing in court of a judgment or an order); see also Flint v. Howard, 464 F.2d 1084, 1087 (1st Cir. 1972) (per curiam). Consequently, there is no basis for additional tolling.

## B.

## Pendency

---

Supreme Court.

28 U.S.C. § 2101(d). The applicable court rule is to the same effect:

> . . . [A] petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment.

Sup. Ct. R. 13(1).

-11-

The tolling provision contained in 28 U.S.C. § 2244(d)(2) speaks in terms of periods of time during which an application for state post-conviction review is "pending." The petitioner argues that his state-court petition for post-conviction review was "pending" within the meaning of this statute until his counsel received notice that the Law Court had denied the application for a CPC.

This argument is refuted by the unambiguous text of the Maine post-conviction review statute. That statute specifically provides that "[d]enial" of a CPC concludes the proceeding. Me. Rev. Stat. Ann. tit. 15, § 2131(1) (stating explicitly that denial "constitutes finality"). Thus, the petition for post-conviction relief was pending only until the Law Court denied the application for a CPC. This occurred when the order of denial was entered on the Law Court's docket, i.e., on December 22, 1997. See supra note 2.

We think that this construction is compelled by the Maine statute. Moreover, this construction is a natural one. Courts seem uniformly to have assumed, without extended discussion, that the date of judgment, rather than the date that notice of judgment is received, controls for computational purposes under 28 U.S.C. § 2244(d)(2). E.g., Adams v. LeMaster, 223 F.3d 1177, 1180 (10th Cir. 2000); Williams v. Cain, 217 F.3d

-12-

303, 309-11 (5th Cir. 2000).  Confirming this intuition, the Second Circuit recently addressed the problem and held, in the context of a New York statute that is much more opaque than its Maine counterpart, that the date of judgment governs.[6]  _Geraci v. Senkowski_, 211 F.3d 6, 9 (2d Cir. 2000).  Hence, the district court did not err in resuming the count on December 23, 1997.

## IV.

## Equitable Tolling

The petitioner's fallback position is that the district court should have applied the doctrine of equitable tolling to permit his federal habeas petition to proceed.  The district court entertained this possibility but rejected it on the merits.  We review that ruling for abuse of discretion, mindful of the "highly deferential" nature of our oversight.  _Delaney_, 264 F.3d at 13-14.

There is, of course, a threshold question:  whether, as a matter of law, equitable tolling is available, even in a factually appropriate case, in respect to section 2244(d)(1).

---

[6]The lone authority relied upon by the petition for a contrary reading of section 2244(d)(2) is _Bennett_ v. _Artuz_, 199 F.3d 116 (2d Cir. 1999).  That decision, at first blush, contains language supportive of the petitioner's position, _see id._ at 120, but that language was clarified by the Second Circuit in _Geraci_ v. _Senkowski_, 211 F.3d 6, 9 (2d Cir. 2000).  As clarified, _Bennett_ does not advance the petitioner's cause.  Indeed, the _Geraci_ court rejected an argument virtually identical to the one made by the present petitioner.  _See id._

This question is not free from doubt. See id. at 14 (discussing the matter and declining to resolve it). Like Delaney, the case at hand does not require us to decide whether a federal court ever can apply equitable tolling to ameliorate the AEDPA's one-year limitation period. Here, the district court squarely confronted the petitioner's equitable tolling claim and rejected it on the facts. Assuming, for argument's sake, that equitable tolling is available in theory, the record compels the conclusion that the district court did not abuse its discretion in withholding that anodyne.

The party who seeks to invoke equitable tolling bears the devoir of persuasion and must, therefore, establish a compelling basis for awarding such relief. Id. We have made it pellucid "that equitable tolling, if available at all, is the exception rather than the rule; [and that] resort to its prophylaxis is deemed justified only in extraordinary circumstances." Id. The district court found that the petitioner had not demonstrated the existence of extraordinary circumstances such as would warrant equitable tolling. We test that finding.

The petitioner premises his claim of equitable tolling on a delay in obtaining the transcript of the evidentiary hearing held in the state superior court in connection with his

state petition for post-conviction review. That delay was unfortunate — but largely beside the point. After all, the district court explicitly found that the petitioner did not need that transcript in order to file a federal habeas application and this finding has deep roots in the record.

The habeas application merely realleged two grounds asserted in pleadings previously filed on the petitioner's behalf in the state post-conviction proceedings. All that the petitioner had to do to place those averments in issue in the federal court proceeding was to "set forth in summary form the facts supporting each of the grounds." Rules Governing Section 2254 Cases in the United States District Courts, 4.2(c). In addition, the petitioner had attended the post-conviction evidentiary hearing and, thus, knew what had transpired at that session. Given the lack of any need for particularity, citation to the transcript was unnecessary in order to allege the grounds for federal habeas relief. It follows that the state court's delay in furnishing the petitioner with the transcript did not establish a basis for equitable tolling. See Gassler v. Bruton, 255 F.3d 492, 495 (8th Cir. 2001) (rejecting equitable tolling argument based on alleged delay in receipt of a transcript); Brown v. Cain, 112 F. Supp. 2d 585, 587 (E.D. La. 2000) (holding transcript unnecessary to prepare habeas petition); Fadayiro v.

-15-

<u>United States</u>, 30 F. Supp. 2d 772, 779-80 (D.N.J. 1998) (holding delay in receiving transcripts not sufficiently extraordinary to justify application of equitable tolling); <u>United States</u> v. <u>Van Poyck</u>, 980 F. Supp. 1108, 1110-11 (C.D. Cal. 1997) (holding delay in receipt of transcript not an "extraordinary circumstance[]" sufficient to justify equitable tolling).

We need not cite book and verse in connection with the district court's finding. What matters is that the court painstakingly weighed and analyzed the totality of the circumstances (including the "delayed transcript" claim) and reached a rational — though not inevitable — conclusion. Given the court's detailed explanation, there is no principled way in which we can disturb its considered refusal to apply the doctrine of equitable tolling to resurrect the petitioner's time-barred habeas application. <u>Cf.</u> <u>Irwin</u> v. <u>Dep't of Veterans Affairs</u>, 498 U.S. 89, 96 (1990) (explaining that equitable tolling "do[es] not extend to what is at best a garden variety claim of excusable neglect").

If more were needed — and we doubt that it is — the district court also found that the petitioner had received his copy of the evidentiary hearing transcript no later than July 24, 2000. At that point, he had more than seven weeks left in the limitation period within which to prepare and file his

federal habeas application.  We agree with the lower court that the petitioner has not adequately shown why that interval was insufficient to permit timely filing.

The petitioner's assertion that his pro se status somehow entitles him to equitable tolling is wide of the mark. While pro se pleadings are to be liberally construed, see, e.g., Johnson v. Rodriguez, 943 F.2d 104, 107 (1st Cir. 1991), the policy of liberal construction cannot plausibly justify a party's failure to file a habeas petition on time.  Indeed, we rejected a virtually identical argument in Delaney, explaining that, "[i]n the context of habeas claims, courts have been loath to excuse late filings simply because a pro se prisoner misreads the law."  264 F.3d at 15 (citing representative cases).

To sum up, the district court found that the petitioner had no compelling need for the hearing transcript in order to prepare his federal habeas application; and that, in all events, the petitioner dawdled for nearly two months after receiving it before he filed his application.  In view of these supportable findings, we discern no abuse of discretion in the court's ultimate conclusion that the petitioner did not establish the kind of extraordinary circumstances that are necessary to justify equitable tolling.  After all, "equitable tolling is strong medicine, not profligately to be dispensed," id., and the

-17-

trial court's judgment about so factbound a matter is entitled to considerable respect.

## V.

## Conclusion

We need go no further. As the district court found, the habeas petition was time-barred and equitable tolling was not available to salvage it. The court, therefore, properly terminated the proceeding.

**Affirmed**.